**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| JERRY ROTEN | CIVIL ACTION NO. 16-0381 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF MINDEN, ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 15) filed by Defendants, the City of Minden ("the City"), Officer Russell Engi ("Engi"), and Lieutenant Seth Young ("Young"). Defendants seek dismissal of all federal claims against Engi and Young on the ground of qualified immunity. They seek dismissal of the Monell claim against the City on the grounds that there is no evidence of a deficient training program and no evidence of deliberate indifference. Finally, Defendants seek dismissal of the state law claims. Plaintiff Jerry Roten ("Roten") opposes the Motion for Summary Judgment, arguing there are genuine disputes of material fact on issues such as probable cause. See Record Document 19. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED** and all claims against Defendants are **DISMISSED WITH PREJUDICE.**

**I.     BACKGROUND**

On March 23, 2015, Engi and Young of the Minden Police Department were notified that there was a suspect causing a disturbance at the Magnolia Motel located on Shreveport Road in Minden, Louisiana. See Record Document 15-2 at ¶ 1; Record Document 19-1 at ¶ 1. The suspect had barricaded himself inside of a room and was refusing to exit. See id. Engi and Young were also informed that the suspect was armed

with either two axes or two swords.  See Record Document 15-2 at ¶ 2; Record Document 19-1 at ¶ 2.

Two other officers, James and Curry, arrived at the scene first, followed by Engi. See Record Document 15-2 at ¶ 3; Record Document 19-1 at ¶ 3.  Engi was made aware that the suspect had been sprayed with pepper spray and had refused to leave the room or drop his weapons.  See id.  When Engi arrived on scene, he retrieved a can of "clearout" brand tear gas that he kept in his vehicle.  See id.  He deployed it in the room but the suspect still did not exit the room.  See id.

On this same date, Roten was at the Louisiana Fried Chicken fast food restaurant located on Shreveport Road in Minden, Louisiana.  See Record Document 28 at ¶ D(1). He noticed three City of Minden police cars in the Magnolia Motel parking lot.  See id. at ¶ D(2).  The Magnolia Motel is located next door to the Louisiana Fried Chicken restaurant. See id.  Roten began video taping the police activity with his cell phone.  See id. at ¶ D(3); Record Document 15-2 at ¶ 7; Record Document 19-1 at ¶ 7.  Engi's vehicle, as well as the vehicles of James and Curry, had in place mobile video systems that also recorded the relevant events of March 23, 2015.  See Record Document 15-2 at ¶ 6; Record Document 19-1 at ¶ 6.

After his initial arrival on scene, Engi moved his patrol car so that it was perpendicular to the entrance to the motel courtyard.  See Record Document 15-2 at ¶ 4; Record Document 19-1 at ¶ 4. According to Engi, he did this for two reasons:  (1) to make clear that vehicles were not to enter the motel courtyard; and (2) to assist officers by providing cover in the event that they were required to retreat from in front of the motel room.  See id.  Young then arrived on scene and placed his vehicle to the south of Engi's

vehicle. See id. at ¶ 5; Record Document 19-1 at ¶ 5.[1]

Roten was initially to the south of Young's vehicle. See Record Document 15-2 at ¶ 8; Record Document 19-1 at ¶ 8. Thus, he was also to the south of Engi's vehicle, to the south of the vehicles of James and Curry, and to the south of the motel room. See id. Roten moved from the south of Young's vehicle between Engi's vehicle and Young's vehicle. See Record Document 15-2 at ¶ 9. Roten contests this fact, submitting that he was never between any police vehicles. See Record Document 19-1 at ¶¶ 9-10; Record Document 19-2 at ¶ 5 (Roten Sworn Declaration). Yet, in his earlier deposition, Roten testified:

> Q. You're in between Lieutenant Young's vehicle and Officer Engi's vehicle?
>
> A. I am.

Record Document 19-3 at 104, lines 1-3. At approximately 3:48 of Roten's cell phone video, Roten pans his cell phone camera from Engi to his left, i.e., south. See Record Document 15-6 (Roten Cell Phone Video). The video clearly captures Young's vehicle, which is behind Roten. See id.[2]

Engi saw that Roten had moved between his patrol vehicle and Young's vehicle.

---

[1] Roten disputes these facts as written, particularly challenging the officers' reasoning for the officers positioning their vehicles. See Record Document 19-1 at ¶¶ 4-5.

[2] As set forth *infra*, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review[ ] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 1776 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.").

See Record Document 15-2 at ¶ 10. Engi submitted an affidavit attesting:

> I believed that it was necessary for the safety of the officers and Mr. Roten for Mr. Roten to remain beyond the police vehicles and to not get between or among the police vehicles, and initially he was in a safe location. As an officer I have been taught to use police vehicles as "cover." If the suspect ran out of the room we could retreat and engage the suspect from a position of safety behind our vehicles. Each of the patrol vehicles were left unlocked so they could be accessed easily, but they also contained additional weapons and equipment.

Id. at ¶ 11, citing Record Document 15-4 at ¶ 4 (Engi Affidavit).[3] Young shared these concerns, as evidenced by his affidavit. See Record Document 15-5 at ¶ 6 (Young Affidavit). Young also attested that it was unknown as to whether the suspect was armed with other weapons such as firearms. See id. at ¶ 4. Roten admits that Engi did not know him and did not know what involvement he had in this incident, if any, or what risk he may have posed to the officers. See Record Document 15-2 at ¶ 13.

The communications between Roten and the officers are recorded, both on the MVS recording as well as the cell phone video. See Record Document 15-2 at ¶¶ 16, 18; Record Document 19-1 at ¶¶ 16, 18. Defendants have submitted a transcript of the pertinent portions of the interaction between Roten and the officers. See Record Document 15-2 at ¶ 18; Record Document 19-1 at ¶ 18; Record Document 15-8. Roten "admits the accuracy" of the transcript cited by Defendants in their Statement of Undisputed Facts. Record Document 19-1 at ¶ 18. The transcript of the communications is set forth below:

    Engi:        Get behind the police car.

---

[3] Roten disputes the contents of Engi's affidavit and maintains that Engi's beliefs are "pretextual." Record Document 19-1 at ¶ 11.

| | |
|---|---|
| Engi: | Get behind the police car. |
| Engi: | Sir. |
| Roten: | I'm not interfering with you. |
| Engi: | This is a, this is a crime scene get behind the police car. |
| Roten: | I'm behind two police cars, I'm behind three police cars. |
| Engi: | Get behind them both. |
| Roten: | I'll tell you what buddy. You're pushing it right now. |
| Engi: | Sir, you don't seem to understand. Get behind the police car. |
| Young: | Get behind that last patrol car. Get behind the police car. |
| Engi: | You're interfering, get behind the police car. |
| Roten: | I'm not interfering with you. |
| Young: | Sir [inaudible]. |
| Roten: | Who are you, what's your name? What's your name? |
| Engi: | We told you to get behind the police car. |
| Roten: | You have to give me your name, you have to give me your name. |
| Engi: | It's right there (points to badge). |
| Roten: | Engi? |
| Engi: | Yea, I told you to get behind the police car. |
| Roten: | (And you?) |
| Young: | Seth Young. That's the name will be on the arrest report. |

Record Document 15-2 at ¶ 18; Record Document 15-8. This exchange clearly captures ten commands for Roten to get behind the police cars. Roten was arrested for interfering

with a law enforcement investigation in violation of La. R.S. 14:39. Roten subsequently refused to give his name to Young. See Record Document 15-2 at ¶ 19; Record Document 19-1 at ¶ 19.

Roten was transported to the Minden Police Department and during the booking process made several statements to Young. See Record Document 15-2 at ¶ 21. Young perceived these statements to be made with the intent to change actions being taken by Young in the performance of his duties. See id. According to Young, Roten stated that he would "be looking for surety bonds on you two." Id. Young interpreted this statement as a threat to having his job. See id. Young believed these actions constituted public intimidation. See id. Roten denied these facts. See Record Document 19-1 at ¶ 21.[4] On March 23, 2015, Roten was ultimately arrested for three offenses: violation of La. R.S. 14:39, Interfering with a Law Enforcement Investigation; violation of La. R.S. 14:108, Resisting an Officer by Failing to Provide His Name; and violation of La. R.S. 14:122, Public Intimidation.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the

---

[4]This dispute is not material as it does not affect the outcome of the suit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

record." F.R.C.P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 324, 106 S.Ct. at 2553; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). However, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review[ ] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 1776 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011)

("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."). Further, the court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

### B. Qualified Immunity Standard.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir.2003). Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008). "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." Mace, 333 F.3d at 624, citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).

The court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. See Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007). First, the court must determine whether the defendant violated the plaintiff's constitutional rights. See id. "If so, [the court] next consider[s] whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 410-411. Even on summary judgment, courts can not ignore that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).

C. Analysis.

Roten asserts causes of action for false arrest and "retaliation and violation of First Amendment rights." Record Document 1 at ¶¶ 17-23. He asserts a Monell claim against the City for failure to properly train police officers on the right of citizen to video record police in public places. See id. at ¶¶ 19, 22. He also asserts state law claims for unlawful arrest, negligence, and retaliation. See id. at ¶¶ 24-27.

False Arrest Claim

Engi and Young enjoy qualified immunity from the false arrest claim if they had probable cause to believe that Roten committed a crime. See Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001). Plaintiffs such as Roten "must clear a significant hurdle to defeat qualified immunity," as there must not even "arguably" be probable cause for the arrest for immunity to be lost. Id. at 190. "That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." Id. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Lockett v. New Orleans City, 607 F.3d 992, 998 (5th Cir. 2010). The probable cause defense to a false arrest claim is broad, as "even if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense." See Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990).

Louisiana R.S. 14:329(A) provides:

Interfering with a law enforcement investigation is the intentional interference or obstruction of a law enforcement officer conducting investigative work at the scene of a crime or the scene of an accident by refusing to move or

leave the immediate scene of the crime or the accident when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties.

La. R.S. 14:329. Here, the undisputed summary judgment evidence establishes that officers were dispatched to extricate, arrest, and investigate a suspect who refused to exit his motel room and was armed with axes or swords. It is also undisputed that the officers had no knowledge of what other weapons the suspect may have had. The officers' investigative work included the removal of the armed suspect; thus, the scene of the crime extended further than the confines of the motel room. The video evidence establishes that Roten refused at least ten orders to move behind Engi's vehicle, thereby requiring Engi and Young to divert their attention from the barricaded suspect to Roten. Thus, based on the knowledge of Engi and Young at the moment of Roten's arrest, including the need for cover and unlocked police vehicles containing weapons and equipment, the totality of the facts and circumstances were sufficient for a reasonable person to conclude that Roten had interfered with a law enforcement investigation.

Roten admits that he was found guilty of resisting an officer by failing to provide his name under La. R.S. 14:108.[5] See Record Document 19 at 28. He appealed this

---

[5]La. R.S. 14:108 provides, in pertinent part:

A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

conviction and it was affirmed. See id. Roten maintains that he is not suing Defendants "for liability on this crime but asserts it is part of his damages for false arrest for interfering with a law enforcement investigation." Id. As previously explained, the probable cause defense to a false arrest claim is broad. Even if there was not probable cause to arrest Roten for interference with a law enforcement investigation, there is no dispute that there was probable cause to arrest him for resisting an officer by failing to provide his name. Probable cause to arrest Roten for this offense is also a defense to the false arrest claim relating to the interference with a law enforcement investigation charge. See Pfannstiel, 918 F.2d at 1183.

Based on the foregoing, the Court holds that Engi and Young are entitled to qualified immunity as to Roten's Section 1983 false arrest claim. Summary judgment in favor of Defendants is therefore **GRANTED**.

Retaliation/Retaliatory Arrest Claim

The First Amendment "prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir.2002) (internal citations omitted). To state a First Amendment retaliation claim, Roten must show that (1)

---

. . .

    (c)    Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

La. R.S. 14:108.

he was engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against his exercise of constitutionally protected conduct. See id. In the context of a retaliatory arrest claim, the Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." Id., citing Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012); see also Ashcraft v. City of Vicksburg, 561 F. App'x 399, 401 (5th Cir.2014) (per curiam ) (holding that police officer was entitled to qualified immunity in the face of the plaintiff's "§ 1983 retaliatory arrest claim because it is not 'clearly established' in the Fifth Circuit that one has the right 'to be free from a retaliatory arrest that [is] otherwise supported by probable cause.'"). Moreover, in Mesa v. Prejean, 543 F.3d 264 (5th Cir. 2008), the Fifth Circuit reasoned:

> Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment. Of course, this is nothing more than a recognition that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent" of the officer.

Id. at 273.

While Roten has a constitutional right to be free from retaliation for exercising his First Amendment rights, Engi and Young may avoid liability if they are entitled to qualified immunity. See Canady v. Prator, No. CIV.A. 13-0923, 2015 WL 507883, at *8 (W.D. La. Feb. 6, 2015). A key issue in relation to qualified immunity and Roten's retaliation/retaliatory arrest claim is whether a First Amendment right to video record police activity was clearly established in March 2015. After the initial briefing on the instant

motion was completed, the Fifth Circuit issued an opinion in Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017), on February 16, 2017. In Turner, the Fifth Circuit held:

> We cannot say, however, that existing precedent placed the constitutional question beyond debate when Turner recorded the police station. Neither does it seem that the law so clearly and unambiguously prohibited the officers' conduct that every reasonable official would understand that what he is doing violates the law. In light of the absence of controlling authority and the dearth of even persuasive authority, there was no clearly established First Amendment right to record the police at the time of Turner's activities [in September 2015]. All three officers are entitled to qualified immunity on Turner's First Amendment claim.

Id. at 687 (internal quotations omitted). The Turner court went on to hold that "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." Id. at 688. Thus, such right is clearly established henceforth. See id. at 688-690.

The events at issue in this case occurred in March 2015. The First Amendment right to record the police was not clearly established at that time. Thus, even if the Court were to assume a violation of Roten's First Amendment rights, the actions of Engi and Young were not objectively unreasonable in light of the clearly established law in March 2015. See Freeman, 483 F.3d at 410-411. Additionally, as set forth *supra*, this Court has held that there was probable cause to arrest Roten. Because there is no "clearly established" right to be free from a retaliatory arrest that is otherwise supported by probable cause in the Fifth Circuit, Engi and Young are shielded by qualified immunity on Roten's retaliatory arrest claim. The Motion for Summary Judgment is **GRANTED** to the extent it seeks dismissal of Roten's retaliatory arrest claim.

Monell Claim Against the City

Municipalities face § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). "Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Id. Here, Roten's Monell claim is based upon a failure to train theory; thus, he must show that: (1) the City's training policy procedures were inadequate, (2) the City was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused, i.e., was the moving force, the violation of Roten's rights. See Sanders-Burns v. City Of Plano, 594 F.3d 366, 381 (5th Cir. 2010). Additionally, for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective. See Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005).

In his opposition, Roten argues that the City did not provide "consistent training." Record Document 19 at 32. Roten maintains that any training relative to a citizen's right to video police activity "caused confusion." Id. at 33. Other than these conclusory allegations, Roten has cited no specific defect in the City's training program. Conversely, Chief of Police Steve Cropper ("Chief Cropper") submitted a sworn statement, wherein he stated that Engi and Young attended police academies, were POST certified, and had attended yearly training involving the legal aspects of policing and to maintain their certifications. See Record Document 15-10 (Sworn Statement of Chief Cropper) at ¶ 2.

Chief Cropper also stated that it was not the policy of the Minden Police Department to arrest persons without probable cause or to arrest persons for recording officers either with an audio recording device or video. See id. at ¶¶ 3-4.

Roten's briefing is also devoid of any deliberate indifference discussion. Generally, in failure to train cases, the plaintiff can show that a municipality deliberately or consciously chose not to train its officers despite being on notice that its current training regimen had failed to prevent tortious conduct by its officers. See Gabriel v. City of Plano, 202 F.3d 741, 745 (5th Cir. 2000). Roten has failed ro present any evidence of a pattern of similar incidents to show deliberate indifference. It appears Roten is attempting to invoke the single incident exception. See id. "The single incident exception requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." Id. The Fifth Circuit has "consistently rejected application of the single incident exception and [has] noted that 'proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'" Id. Again, Roten offers no evidence of "the possibility of recurring situations." Thus, summary judgment in favor of the City is **GRANTED** as to Roten's failure to train Monell claim.

State Law Claims

Roten asserts state law claims of unlawful arrest, negligence, and retaliation. Roten's state law unlawful arrest claims fail. Article I, Section 5 of Louisiana's Constitution protects against unreasonable searches and seizures and, is, therefore, analogous to the federal Fourth Amendment. See Thomas v. Town of Jonesville, 11-408, 2013 WL 265235 at *6. The qualified immunity analysis applied by courts to Fourth Amendment § 1983

claims applies equally to Louisiana constitutional law claims." Id. Thus, Roten fails to demonstrate that Engi and Young are not entitled to the defense of qualified immunity as to his claim under Art. I, § 5 of the Louisiana Constitution.

Roten's false arrest claim under Louisiana tort law likewise fails. "Under Louisiana law, in order to demonstrate a claim for false arrest, [a] plaintiff must prove that the arrest was unlawful and that it resulted in an injury." Id. at *7. "An arrest is unlawful if the arresting officer lacked probable cause for the arrest." Id. For the reasons stated above, the Court has already found that probable cause existed for Roten's arrest. Any other negligence claims asserted by Roten suffer the same fate, as this Court has held Engi and Young are entitled to qualified immunity. The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined.[6]

Finally, Roten's free speech retaliation claim under the Louisiana Constitution fails. "Louisiana's constitutional protection of free speech mirrors that of the First Amendment." "The Louisiana Supreme Court has stated that Louisiana's protection of free speech was designed to serve the same purpose as the federal constitution." "The judicial determination of a claim brought pursuant to the parallel sections of the federal constitution is applicable" to state constitutional claims. Based on the foregoing, summary judgment in favor of Defendants is **GRANTED** and all of Roten's state law claims are dismissed with

---

[6]Any vicarious liability claim under Louisiana Civil Code Article 2320 against the City fails there was no underlying tortious conduct of Engi and Young. Thus, there can be no vicarious liability on the part of the City. See Cormier v. Lafayette City-Parish Consol. Govt., No. 11-31125, 2012 WL 4842272, *5 (5th Cir. 10/12/12); Bates v. McKenna, No. 11-1395, 2012 WL 3309381, at *7 (W.D. La. Aug. 13, 2012); Courville v. City of Lake Charles, 720 So.2d 789, 800 (La. App. 3 Cir. 1998).

prejudice.

## III. CONCLUSION

The Court holds that there was probable cause to arrest Roten and Engi and Young are entitled to qualified immunity as to Roten's false arrest and First Amendment retaliation/retaliatory arrest claims. Roten's Monell claim fails as he has not demonstrated a specific defect in the City's training program and/or deliberate indifference. Finally, Roten's state law claims likewise fail. Summary judgment in favor of Defendants on all claims is appropriate as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Record Document 15) be and is hereby **GRANTED**. All of Roten's claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of April, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE